1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TERESA DIANE BAKER, | Case No. 1:24-cv-00899-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| LELAND DUDEK,<br>Acting Commissioner of Social Security[1], | |
| Defendant. | (Doc. 1) |
| _____/ | |

## I.    INTRODUCTION

Plaintiff Teresa Diane Baker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.    FACTUAL BACKGROUND

Plaintiff was born in 1967, has a limited education, and previously worked as an adult

---

[1]  On February 19, 2025, Leland Dudek was appointed the Acting Commissioner of the Social Security Administration.  *See* https://blog.ssa.gov/statement-from-acting-commissioner-dudek/ (last visited by the Court on February 24, 2025).  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").
[2]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 10.)

caregiver.  (Administrative Record ("AR") 39, 79, 87, 88, 249, 253, 254, 261.)  Plaintiff filed a claim for SSI payments on May 31, 2016, alleging she became disabled on August 1, 2015, due to microcytic anemia and acute kidney injury.  (AR 25 ,79, 80, 87, 249, 252, 278, 287.)

Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on April 27, 2020, finding Plaintiff not disabled.  (AR 29–40.)  On February 11, 2021, Plaintiff filed another SSI application alleging disability as of April 29, 2020, due to scoliosis, PTSD and "[being a] slow learner," and on March 9, 2021, also appealed the ALJ's 2020 decision to the district court.  (AR 563, 588, 613, 818–824.)  The parties thereafter voluntarily remanded the case for further proceedings for the ALJ to "further evaluate the evidence, including evidence related to Plaintiff's obesity."  (AR 617–19.)  Upon remand, the Appeals Council consolidated Plaintiff's two SSI claims and directed the assigned ALJ to, among other things, "[e]valuate [Plaintiff's] medically determinable impairments including obesity to determine to what extent they limit the claimant's ability to perform basic work activities."  (AR 623–24.  *See also* AR 423.)  The ALJ thereafter conducted a hearing and issued a "partially favorable" decision on May 4, 2024, finding Plaintiff "was not disabled prior to May 17, 2022, but became disabled on that date and has continued to be disabled through the date of this decision."  (AR 423–38.)

A.    **Relevant Evidence of Record[3]**

In August 2019, Plaintiff presented for a mental evaluation by Lance A. Portnoff, Ph.D. (AR 407–14.)  Following an examination, Dr. Portnoff opined, among other things, that Plaintiff "is able to perform simple and repetitive tasks."  (AR 413.)  Dr. Portnoff found that Plaintiff had "moderate limitations in her ability to complete a normal workday or workweek without interruptions from a psychiatric condition due to combined neurocognitive and affective symptoms."  (AR 413.)  He further opined that Plaintiff's "ability to deal with the stress encountered in a competitive work environment is moderately impaired due to unspecified depressive disorder, post-traumatic stress disorder, obsessive-compulsive disorder, and impaired mental flexibility."  (AR 414.)

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

1    **B.**      **Administrative Proceedings**

2        The Commissioner denied Plaintiff's application for benefits initially on October 3, 2016,

3 and again on reconsideration on January 10, 2017.  (AR 29, 103–107, 109–114.)  Following a

4 hearing, an Administrative Law Judge (ALJ) issued a written decision on April 27, 2020, finding

5 Plaintiff not disabled.  (AR 29–40.)  Plaintiff appealed the decision to the district court and the

6 parties thereafter voluntarily remanded the case for further proceedings for the ALJ to "further

7 evaluate the evidence, including evidence related to Plaintiff's obesity."  (AR 617–19.)  Upon

8 remand, the Appeals Council directed the assigned ALJ to, among other things, "[e]valuate

9 [Plaintiff's] medically determinable impairments including obesity to determine to what extent

10 they limit the claimant's ability to perform basic work activities."  (AR 623.  *See also* AR 423.)

11        At a hearing held on February 8, 2024, Plaintiff appeared with counsel and testified before

12 an ALJ as to her alleged disabling conditions.  (AR 467–78.)  A medical expert and a vocational

13 expert also testified at the hearing.  (AR 456–62, 478–82.)

14    **C.**      **The ALJ's Decision**

15        In a decision dated May 4, 2024, the ALJ issued a "partially favorable" decision, finding

16 Plaintiff "was not disabled prior to May 17, 2022, but became disabled on that date and has

17 continued to be disabled through the date of this decision."  (AR 423–38.)  The ALJ conducted the

18 five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 426–38.)  The ALJ decided that

19 Plaintiff had not engaged in substantial gainful activity since the date of the application (step one).

20 (AR 426.)  At step two, the ALJ found Plaintiff's following impairments to be severe since the

21 date of application, May 31, 2016: unspecified depressive disorder; post-traumatic stress disorder;

22 obsessive compulsive disorder with trichotillomania; unspecified learning disorder; Attention

23 Deficit Hyperactivity Disorder, inattentive type; and borderline intellectual functioning.  (AR 426–

24 27.)  Since May 31, 2016, Plaintiff did not have an impairment or combination of impairments that

25 met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

26 1 ("the Listings") (step three).  (AR 427–29.)

27

28

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that, prior to May 17, 2022, Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: they would be limited to simple and routine tasks, routine work-related decision making and can have only occasional interactions with supervisors, coworkers, and the general public.

(AR 429–36.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not fully supported prior to May 17, 2022, for the reasons explained in this decision."  (AR 436.)

The ALJ determined that Plaintiff had no past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five).  (AR 436–38.)  The ALJ concluded Plaintiff "was not disabled prior to May 17, 2022, but became disabled on that date and has continued to be disabled through the date of this decision."  (AR 438.)

### III.    LEGAL STANDARD

#### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is

'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ's RFC assessment is erroneous because, among other things, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for implicitly rejecting the opinion of consultative examiner Dr. Portnoff that Plaintiff

would have moderate limitations in her ability to complete a normal workday or workweek without interruptions from a psychiatric condition, and a moderate impairment in her ability to deal with the stress encountered in a competitive work environment.  (Doc. 20 at 5–10; Doc. 23 at 2–5.) The Court agrees.

**A.    The ALJ Did Not Properly Account for the Consultative Psychologist's Opinion in Determining Plaintiff's Residual Functional Capacity**

**1.    Legal Standard**

The weight given to medical source opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.[5]  *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  *Holohan*, 246 F.3d at 1202.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  *Lester*, 81 F.3d at 830; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record."  *Lester*, 81 F.3d at 830–31.  The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

**2.    Analysis**

In his decision, the ALJ purported to give "weight" Dr. Portnoff's opinion, which included Plaintiff's moderate limitations completing a normal workday or workweek due to her psychiatric condition, and a moderate impairment in her ability to deal with the stress encountered in a competitive work environment.  (AR 433–34.)  The ALJ explained that he gave the opinion such

---

[5] Plaintiff filed her initial SSI claim before March 27, 2017, so Section 416.927, not Section 416.920c, governs the ALJ's evaluation of medical opinions.  *See* 20 C.F.R. § 416.920c; 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

weight because it was "supported by direct examination findings and is consistent with the other evidence of record." (AR 434.) However, nothing in the ALJ's RFC—including the limitation to "simple and routine tasks [and] routine work-related decision making . . . and [] only occasional interactions with supervisors, coworkers, and the general public." (AR 429)—accommodates these opined moderate impairments. While the ALJ need not accept the full extent of Dr. Portnoff's opinion, the ALJ may not reject it, or significant parts of it, without giving specific and legitimate reasons for doing so. *See Lester*, 81 F.3d at 830–31. Accordingly, the ALJ erred by not providing specific and legitimate reasons, supported by substantial evidence, for implicitly rejecting significant portions of Dr. Portnoff's opinion. *See, e.g., Bain v. Astrue*, 319 F. App'x. 543, 545–46 (9th Cir. 2009) (finding ALJ erred in not including consultative examining psychologist's moderate limitations in the RFC, despite crediting the limitations in the decision); *Barnes v. Colvin,* Case No. 5:16-CV-01183-SK, 2017 WL 8220233, at *3 (C.D. Cal. Apr. 17, 2017) (finding ALJ erred in failing to explain why RFC assessment did not adopt consultative psychiatrist's moderate difficulties performing work activities on a consistent basis without special or additional supervision and moderate limitations completing a normal workday or workweek due to his mental condition); *Jackson v. Colvin*, No. EDCV 12–00606–MAN, at *5 (C.D. Cal. May 2, 2013) (finding ALJ erred in failing to proffer any reason for failing to explain the rejection of consultative psychiatrist's opinion that claimant would have mild to moderate limitations with respect to handling normal stresses at work). *See also* Titles II & XVI: Capability to Do Other Work—The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1985 WL 56857, at *5–6 (S.S.A. 1985) (emphasizing that mentally impaired people often "have difficulty accommodating to the demands of work and work-like settings" and thus "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment").

Defendant's claim that the ALJ properly accounted for Dr. Portnoff's endorsed moderate limitations by restricting Plaintiff to simple work is unavailing. (Doc. 22 at 6–8.) Defendant primarily relies on *Stubbs-Danielson v. Astrue*, in which Ninth Circuit held that an ALJ appropriately translated "pace and the other mental limitations regarding attention, concentration,

and adaption" into "the only concrete restrictions available to him," namely a limitation to simple tasks.  *See id.* 539 F.3d 1169, 1174 (9th Cir. 2008).  *Stubbs* did not specifically address the extent to which a limitation to simple and routine tasks appropriately accounts for the limitations identified by Dr. Portnoff here, and opinions at issue in *Stubbs* were distinct from the opinion at issue here.  The court's discussion in *Stubbs* reveals only that the physicians opined on the claimant's mental functioning in the areas of pace, attention, concentration and adaptation.

Here, by contrast, Dr. Portnoff identified comparatively more concrete restrictions, namely directed to the ability to handle the usual stressors encountered in the workplace and complete a normal workday or workweek without interruption from psychiatric conditions.  *Stubbs* is therefore inapposite, as other courts have held under similar circumstances.  *See, e.g., Ferguson v. Comm'r of Soc. Sec.*, No. 1:18-CV-01585-EPG, 2019 WL 6341034, at *6 (E.D. Cal. Nov. 27, 2019) ("Moreover, even under the *Stubbs-Danielson* analysis, the ALJ's RFC fails to account for specific concrete work restrictions given by the doctors, including 'The claimant has a fair ability to accept instructions from supervisors and interact with co-workers and the public,' 'The claimant is not able to perform work activities on a consistent basis without special or additional instruction,' and 'The claimant is not able to deal with the usual stress encountered in a competitive work place.'  ***These are concrete restrictions, not statements about mental function generally***.'') (emphasis added).

As for the unpublished district court case law on which Defendant also relies, this Court has observed that "the weight of more recent case law [ ] tends to refute the argument that a limitation to simple, routine tasks in the RFC adequately accounts for moderate limitations in the ability to complete a normal workday and the ability to handle stress."  *Slover v. Kijakazi*, No. 1:21-cv-01089-ADA-BAM, 2023 WL 5488416, at *4 (E.D. Cal. Aug. 24, 2023); *Harrell v. Kijakazi*, No. 1:20-cv-00614-GSA, 2021 WL 4429416, at *6–7 (E.D. Cal. Sept. 27, 2021) (collecting cases); *Ramirez v. Kijakazi*, No. 1:22-cv-00445, GSA, 2023 WL 4409853, at *5 (E.D. Cal. Jul. 7, 2023) (explaining that "case law in this circuit is split but tends to favor the view that a restriction to simple/routine tasks is not a catchall and does not account for all moderate limitations"); *Berenisia Madrigal v. Saul*, No. 1:18-cv-01129-SKO, 2020 WL 58289, at *5 (E.D.

9

Cal. Jan. 6, 2020) (finding that a restriction to simple, routine tasks does not account for mental limitations in the ability to complete a normal workday or workweek without interruptions from a psychiatric condition and the ability to deal with stress and changes encountered in the workplace); *Sahyoun v. Saul*, No. 2:18-cv-576-EFB, 2020 WL 1492661, at *4 (E.D. Cal. Mar. 27, 2020) (rejecting argument that the RFC determination that plaintiff could sustain work involving simple, repetitive tasks adequately captured moderate limitations in maintaining regular attendance, completing a normal workday or work week without interruption from a psychiatric condition, and handling normal work-related stress).  The Court finds, consistent with the foregoing, that the ALJ's decision to limit Plaintiff to work consisting of "simple and routine tasks [and] routine work-related decision making" did not adequately address or account for Dr. Portnoff's moderate limitations as to Plaintiff's ability to complete a normal workday or workweek without interruptions and her ability to deal with the usual stress encountered in the workplace.

On the present record, the Court cannot determine whether the ALJ's error in failing to discuss the reasons they rejected these limitations was harmless.  *See Molina*, 674 F.3d at 1115 ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination.") (citations and quotations omitted); *see also Thompson v. Astrue*, No. ED CV 12–265–E, 2012 WL 4513724, at *4 (C.D. Cal. Oct. 2, 2012) (holding ALJ's error in failing to discuss consultative psychiatrist's opinions regarding mild to moderate limitations completing complex tasks, handling normal stresses at work, and completing a normal work week without interruption not harmless where RFC was limited to moderately complex tasks up to four to five steps).  While moderate limitations are not *per se* disabling, they may translate into concrete work restrictions that, when considered in connection with Plaintiff's other restrictions, may render her disabled. *See Macquarrie v. Comm'r of Soc. Sec.,* No. 1:21-CV-00072-CDB, 2023 WL 8242069, at *7 (E.D. Cal. Nov. 28, 2023) (citations omitted).  The vocational expert did not testify that a person could work with the moderate limitations Dr. Portnoff opined.  (*See* AR 478–82 (vocational expert's testimony).)  However, the vocational expert did testify that if a person with the ALJ's assessed RFC would also be absent from work two days per month on an unscheduled basis, would need two additional 15-minute breaks per day, or were off task 15% of the workday, that person would

not be able to perform any jobs in the labor market.  (AR 480–81.)  Accordingly, remand is warranted on this issue.  *See, e.g.*, *Devery v. Colvin*, Case No. CV 15-08503-RAO, 2016 WL 3452487, at *5 (C.D. Cal. June 22, 2016) (court could not determine harmlessness of ALJ's failure to discuss reasons she rejected limitations because VE did not testify that a hypothetical person with those limitations could work); *Dunlap v. Astrue*, No. CIV S–09–3446 EFB, 2011 WL 1135357, at *6 (E.D. Cal. Mar. 25, 2011) (court could not determine harmlessness of error because it was unable to "determine how the VE would have responded if he had been given a hypothetical containing [examining physician]'s actual opinion.").

**B.      The Court Declines to Determine Plaintiff's Remaining Assertion of Error**

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ failed to follow the Appeals Council's remand order (Doc. 20 at 10–11; Doc. 23 at 5–7).  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised.").  *See also Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

**C.      Remand for Further Proceedings is Appropriate**

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  Because further administrative review could remedy the ALJ's error, remand for further administrative proceedings, rather than an award of benefits, is warranted here.[6]  *See Brown-*

---

[6] Plaintiff concedes the error identified above can be remedied with further proceedings.  (*See* Doc. 20 at 11.)

*Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). *See also Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) ("If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) ("Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Brown-Hunter*, 806 F.3d at 495 (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. *See, e.g., Slover*, 2023 WL 5488416, at *5. On remand, the ALJ shall reconsider the opinion of Dr. Portnoff regarding Plaintiff's moderate limitations, and either credit his opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it. The ALJ shall also consider the medical evidence of Plaintiff's alleged medical determinable impairments and, if necessary, reassess Plaintiff's RFC, considering the entirety of Dr. Portnoff's opinion, as well as the other medical evidence (including Plaintiff's obesity). The ALJ shall then proceed through steps four and five to determine what work, if any, Plaintiff can perform prior to May 17, 2022, the date on which the ALJ has already found Plaintiff became disabled. (*See* AR 438.)

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of Court is DIRECTED to enter

judgment in favor of Plaintiff Teresa Diane Baker and against Defendant Leland Dudek, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 24, 2025**                              /s/ *Sheila K. Oberto*
                                                        UNITED STATES MAGISTRATE JUDGE